Brown and Cooper. This is consolidated for argument. May it please the court, my name is Ronald Krause. I'm an assistant federal public defender for the Middle District of Pennsylvania and I represent Edwin Brown and Anthony Cooper in this consolidated appeal. I would like to reserve two minutes for a vote if that's alright Mr. Krause. Thank you. As an initial matter your honors, I'd just like to address the fact that one of the cases consolidated for argument, U.S. v. Wise, is a case that I did not handle. Originally counsel for Mr. Wise was going to take some time but has decided not to. I just want to inform the court that I don't know anything about that case and so would not be able to answer any substantive questions about the particulars of that case. You should be arguing the crack powder cocaine disparity issue which overlaps the Wise case. That's correct your honor and I suspected, although the court didn't give a specific direction for this argument, I suspected that the court wanted and was most interested in hearing about the two issues that it requested a supplementary letter on. That's the focus of our concerns. Great. And frankly the supplementary letter that I provided as I reviewed it in preparation for this argument, I had some concerns that it was somewhat perhaps incomplete and maybe took a bit of a wrong tack in terms of the argument. So I'd like to take a little bit of perspective on the argument and I'm going to be bringing to the court's attention two cases that I have, since I wrote that letter, become aware of. So the two issues that I think the court is interested in is the scope of the 3582C2 resentencing for the reduced crack guidelines and what relief the court should provide. We're also interested in the effect that Kimbrough has perhaps brought to our jurisprudence as stated in Gunter and Ricks and Cooper. You might start with that. Is there really any change in our sentencing jurisprudence? Well, I think the change is more in emphasis rather than a technical change. I think Kimbrough is significant and I think Gaul is the combined effect of Gaul and Kimbrough are significant because they both have emphasized that there needs to be a shift in power to determine sentences away from the guidelines, away from the prosecutors and back in the hands of the district court judges who are in the best position to decide sentences for each individual case. The district judge is going to do anything different under Kimbrough than what they were doing before Kimbrough? Well, I think they might, Your Honor, because I think Kimbrough really emphasized for everyone how much discretion the district court judges really have and how important Didn't Kimbrough just say, though, that the crack powder differential is the same as every other piece of the guidelines? It's an advisory statement and it's not something that district court judges need to be bound by. They should pay attention to it, but they don't need to be bound by it. I mean, Kimbrough doesn't really stand for anything more than that, does it? Well, you could look at it that way, Your Honor, but I think it was very emphatic and I think particularly when we're referring to the crack deadlines, which are now going to be reduced, and how the 3582 proceedings are going to be handled, I think Kimbrough is important because the court very specifically stated, and this was at least in the Lexis pagination, that star 14, we hold it under Booker that cocaine guidelines, like all the other guidelines, are advisory only, so that in the resentencing process when the district court judges are looking at the reduction of the 3582, they're going to be looking at the guidelines as advisory only. Isn't that exactly... I'm sorry. Didn't you say in your letter to us that you thought that the district court understood that? Well, again, I think the district court had a sense of it. I think Kimbrough is significant in that it emphasized very strongly, and particularly in the crack guidelines context, that any cocaine guidelines, including the now amended guidelines reduced by two levels, are still advisory only, and that the district court has to conduct a full resentencing of the defendant when he comes back under 3582. Isn't that the rule that was in place in this circuit under Gunter before Kimbrough was decided? In essence, it was, Your Honor. And again, I just would urge that Kimbrough is a matter of emphasis more than anything else. In Kimbrough, the sentence was 4.5 years below the guidelines. The Supreme Court upheld that. That's a fairly substantial variance under the guidelines. And I think here the record may not be entirely clear that the district court understood that it had that breadth of discretion. But if the rule is the same, and those are the same rules that the district judges in all three of these cases followed, and all three judges in these three cases mentioned the crack powder disparity, why isn't that sufficient to simply affirm the three sentences? Well, it may be, Your Honor, at least to the extent that you're not taking into consideration the 3582 proceedings. Can I ask you about that? Yes. These were lawful sentences. I mean, there's no contention, is there, that the sentences were unlawful? I mean, defendants may not have liked them, but they were lawfully, you know, I don't see any argument that the guidelines were miscalculated or that the judge misapprehended the defense level or the criminal history category or anything like that, right? That's true as of the time of the sentencing, yes. So if they were lawful at the time of sentencing, and the Congress has set out through 3582 a means for a defendant to seek a reduction in sentence if there's been a change in the guidelines, and the Sentencing Commission has laid out its anticipated plan for how to do that with the proposed amendment to 1B1.10, if there's that route laid out, what would counsel against following that specific route, that is, simply affirming and then letting defendants do what they think they need to do if they want to assert rights under 3582? Well, first of all, Your Honor, in both of the cases that I'm representing the appellants in, there are issues other than the crack guidelines, and I would certainly urge the court to address those arguments and... Understood, and I don't mean to say we're going to ignore your other arguments, but given the limited focus and time we've got here today, the limited time we've got, focusing on that, what would be, I mean, it looks like Congress has laid out a route, the commission has an anticipated idea about how this would work. Why would we remand a lawful sentence? Well, the Second Circuit Court of Appeals, and this is one of the decisions that I wanted to bring to Your Honor's attention, in the case of U.S. v. Stewart, which is reported that 2007 U.S. Act Lexus 29680, that was issued on December 21, 2007. It was a summary order in a case that was very similar to this, where the crack guidelines were involved, and the Second Circuit issued a summary order vacating and remanding the district court for plenary reconsideration of the sentencing in light of Kimbrough and Gall. And I think it might be something for this court to consider following their lead, because what that would do is it would require the district court to enter into the kind of full leniency that the district court would have to require in any event. But that was already, but the judges already did that. They factored in the crack powder disparity. And now you say that Kimbrough has wrought an emphasis that is different from an emphasis that existed previously, is that correct? I think, yes, Your Honor. See, I'm trying to figure out what's going to happen that's different from what has already occurred. I believe that's true. I think the language of Kimbrough, although foreshadowed by this court's jurisprudence, I think Kimbrough really magnified the discretion that the district court has because of the facts of that case, as I mentioned. We have to write an opinion in this case, and the district judges are going to get these cases back if we agree with you. Well, I don't think that the record, at least in Cooper and Brown, are clear that the judges paid sufficient attention to something that the court in Kimbrough emphasized very strongly, which is known as the parsimony provision, and that the district courts are permitted to look to see whether the crack powder disparity yields a sentence greater than necessary to achieve the purposes of 3553A. Let me quote you something from the record. This is in the Brown sentencing. Quote, I do consider the powder crack cocaine disparity. I think the court should. I think the guideline range is much higher, much, much higher than it would be had the So I consider that in the calculations, unquote. What could we possibly say to a district court judge to get that judge to understand that something else or different was needed than that? If the district judge says, I've thought about it, I recognize this, I'm sentencing with that in mind, what else would you have us tell them? I think the court might be assisted by a reemphasis of the Kimbrough holding and the language in Kimbrough. Plus, there's a new Are you saying we should say, we know you've thought about it, but we want you to think about it again? Well, in light of the reemphasis in Kimbrough on the district court's discretion, plus there's a new atmosphere now with the crack guidelines having been reduced, the district courts might feel that they have more scope in terms of the variance that they could permit a defendant in one of these cases. They might have felt much more constrained before Kimbrough and before the sentencing commission reduced the guidelines. You think they might feel they have a little more play in the joints with the sentence? That's exactly right. That's exactly right. It's really more a matter of emphasis at this point. As I said, Kimbrough was foreshadowed by this court's jurisprudence, but I think it made some very strong points that might affect how a district court judge might re-sentence. I see my time is up. Judge Jordan has a few more questions. Yeah, about 3582. I think I stepped on Judge Du Bois' question a few minutes ago if you had something. I was concerned about 3582C as well. What happens? Is that what you were concerned about? Yeah, that's just what I was going to ask about. Go ahead. As a practical matter, let's say we did send this back and the judge re-sentenced in light of Kimbrough and Gall and imposed a sentence. Is there anything that would prevent one of your clients from saying, okay, great, I got that re-sentencing. Now, I also want you, I'm making an application under 3582C2, and I want you to reduce my sentence because of the crack disparity guideline change. In other words, what would prevent a defendant from getting two bites at the sap under the route you proposed? I think that would be a matter mainly of administration. I think if the reduced crack guidelines become effective March 3rd, I think just in terms of the timing, if the sentencing occurs after March 3, then those new guidelines would go into effect and there would be no further basis for a reduction. So that would be folded into the re-sentencing. I did just want to, just very briefly want to bring the court's attention to United States v. Hicks, 472F3-1167, where the Ninth Circuit dealing with a different crack, I'm sorry, a different sentencing guideline reduction held that 3582 requires a full VOCA re-sentencing. Thank you. Thank you, Mr. Krauss. You have two minutes on rebuttal. Mr. Smith? May it please the court, my name is Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania in Harrisburg. Representing the United States, the appellee in all three of these appeals. Right after this court decided United States v. Gunter, I think a lot of us in U.S. attorneys offices could have been in those Southwest Airlines commercials wishing we were somewhere else. But since that time, I think perhaps AUSAs in the Eighth Circuit are going to want to come to Philadelphia, or wish they had been in Philadelphia, I guess I should say. Seems like Gunter was on target. I think Gunter was Delphic. It foreshadowed Kimbrough, I think, in every way. And I think the district judge here, it was the same district judge, by the way, in all three cases, I think she applied, applying Gunter as she did, applied Kimbrough. She was entirely consistent in each of the three cases with the mandate of Kimbrough. And there's no better demonstration of that than the language that Judge Jordan read. This was not a judge who seemed to feel constrained unduly by the guidelines at all, much less the 100 to 1 ratio for crack to powder. Indeed, in the Cooper case, she departed downward, or I shouldn't say departed, she varied downward 32 months. Well, that's a question, and it's a very important question in Cooper. The record on that is not entirely clear to me. I want to read to you from Appendix 174, going over to 175 in the Cooper case. Chief Judge Cain said there, I find that under all of those circumstances, a guideline sentence is appropriate and just, and that the defendant would even be appropriately placed at the higher end of the guideline range. However, I do think that the court should consider the disparity in sentencing between crack and powder cocaine and should consider the disparity in sentences between the defendants, Mr. Reyna and Mr. Rosado, then going on, skipping a sentence. Still, I think some adjustment in the guideline range is appropriate, given the relative conduct of the defendants who are involved in the drug transactions. So I'm making some adjustment to the guideline range, considering all of those things. I guess we will call it a deviation rather than a departure, unquote. Here's the question that that raises in my mind. You call that a variance. I'm not sure what to make of it, and my question is this. Given the language of Guideline 1B1.10 as it is to go into effect on March 3rd, whether you are being sentenced with a variance or with a departure seems to have real legal significance because, if I'm not mistaken, the language says in Section B2B, quote, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. 3553A and U.S. v. Booker, and I read that to mean, in other words, if it's a variance, not a departure, a further reduction generally would not be appropriate. So what Chief Judge King did, whether it was a variance or whether it was a departure, seems like it would have real significance for Mr. Cooper because, if it's a variance, the new 1B1.10 would seem to say, well, he doesn't get a crack at this under 3582C2, whereas, if it's a departure, he does. Am I wrong? Am I right? Do I need to be concerned? I'm not. I think your concern is well taken. I think your analysis is exactly how I would analyze it. I think, to me, it is fairly clear from this record that she started calling it a departure, then she called it a deviation, which is another term synonymous, a term she and other courts have used synonymously with variance. I don't think it was a departure because a departure is within the rather restricted structure of the guidelines themselves. Is a departure the sentence outside of the guidelines? It is a sentence outside of the guidelines. A departure is a sentence that's outside of the guidelines, relying upon one of the factors set forth in Chapter 5, where the guidelines specifically allow or even encourage or discourage departures. This is a variance, I think, or, as she said, a deviation under 3553A. Now, in answer to your question, Judge Shorten, I don't want to stop. I don't want to cut you off. I assume you're right. It's a variance. Okay. Doesn't that mean Mr. Cooper is out-elect under 3582? Well, the policy statements, 1B1.10, say that in that instance, generally, no further reduction would be called for. I don't think that's a prohibition against a further reduction. And I anticipate some judges are going to give a two-level additional reduction, even though there was a variance. And I think some judges aren't. And I think our office and other U.S. attorneys' offices will vigorously oppose some of those. I think we will less vigorously oppose others. And we will probably have not much to say about yet others. What is, Mr. Smith, your office's position with respect to these cases? Is it cleaner to simply remand and let the judge take another crack at it? No. I think this Court should address the issues that were originally raised in these appeals. And, of course, you know from reading our briefs what we think about those issues. Well, we're going to address those issues. But, of course, I mean with regard to the resentencing. Well, then, no. I don't think there should be any resentencing based on Kimbrough or Gall, any remand based on Kimbrough or Gall, because I think nothing changed. You know, the thing is that, of course, Kimbrough was not out there when these sentences were imposed. So, take a look at Brown's sentence. He received an aggregate range of 294 to 346 months. That's a lot of time. The sentence was right in the middle range at 324. So, I mean, to me, doesn't that suggest that drug disparity was not really considered as Kimbrough would have the judge consider? No. Because the court said, I think the highest sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, to deter this defendant, and to protect the public from his future conduct. I do consider the powder crack cocaine disparity. I think the court should. I think the guideline range is much higher, much, much higher than it would be had the So, I consider that in the calculations. And she says, what else she's considering? Everything about this case suggests to me that a guideline sentence at the very top of the range is warranted. I can't picture a case in this guideline range that would be, would represent worse conduct than what we saw here. But I am looking at the defendant's age. I'm looking at the disparity between powder and crack cocaine. So, I'm going to sentence him in the middle of the guideline range. The range is 210 to 262. I'm going to sentence him on count one to a term of 240 months. So, the court gave 22 months' worth of consideration to the combined factors of his age and the guideline disparity. So, I think, as Judge Jordan articulated to my worthy opponent during his argument, I What do you tell Judge Kane to do? Well, we can see that you considered it, but consider it again. Consider it more. I'd suggest that district court judges and prosecutors and all the folks in the court systems down in the districts, over in the districts, wherever, should, you know, have better things to do than to re-sentence every single one of these defendants. If we were to affirm it, would that keep Mr. Brown from filing a motion for reconsideration? I think if you affirm and say that the district court adequately considered it, that would prevent him from filing anything based on Kimbrough or Gall. But, of course, he would absolutely be... It wouldn't prevent him from filing a motion. Well, nothing prevents him from, as we know, nothing prevents him from filing motions. It certainly would not prevent him from filing a 3582C motion on or after March 3rd, 2008, asking for the two-level reduction under the retroactive crack amendments. And we... Our district happens to have more than any of those ready to be filed, just waiting to be filed, than any other district in the circuit. So we feel we have a strong institutional interest in not having every case come back, in addition to those cases that we're going to have to deal with, that the district courts are going to have to deal with, not having every other case involving crack cocaine come back for a re-sentencing, for reconsideration under Kimbrough and Gall, when, in fact, the district court did everything the district court was required to do under Kimbrough and Gall. You probably will. I don't know how many you're going to get, but the defendants are going to say, you didn't deviate enough. You didn't give me... Well, the guidelines are already going to factor in a two-level reduction. Is that right? Yes. I mean, as of March 3rd. In those cases, I think there's a substantial... And I don't think this is within the purview of the court's request. Of course, anything the court's interested in is within the purview. But I don't... This is not really an issue I came prepared to discuss at great length. But I think there's a substantial question of how much of an appellate review there is after 3582C reduction, based on the retroactive guidelines. But that's something the court's going to have to grapple with when it comes before the court. Do you think it's something less than the reasonableness review that Gall tells us we're supposed to be engaged in under an abuse of discretion standard? Well, you see, I thought that about sentences within properly calculated guideline ranges in Cooper, and I lost that fight. I think there are good arguments in favor of suggesting to this court that its appellate review of sentences modified under 3582C is restricted, based on some of the same factors I argued in the Cooper case. But you don't think that's something we should get into in this case? I don't think there's any reason to, because Congress has created a structure for the courts to work with. I don't even think the court should remand for the district court to consider whether to impose a reduction under 3582C. Why? I think the court should. Why? Tell me what you think we ought to do. Because that is something that is available to every defendant, regardless of where his case is. I think the court should, assuming it's satisfied with the other issues. When you say that's something that is available, what is the that that's available to all defendants, regardless of where their case is? The ability to move for a reduction or a modification of the already imposed sentence under section 3582C. Is that what you would like us to say? Don't bother appealing it, just file a motion? Yes. I think that is what the court should say. I guess you have a big chunk of these 19,000 cases. We have 358, and that's the largest number of any district in the circuit. We're sparsely populated, but we do a lot of work in the Middle District, and I think that is the most orderly fashion. And it's not like we're looking to the court. I mean, if any of these defendants is a defendant whom under 3582C would be entitled to a reduction on March 3rd, and somehow the court doesn't feel that it could dispose of this appeal by March 3rd, I'm not suggesting that the court should not give a defendant an opportunity to pursue the full extent of relief available to him. In those cases, a remand might be appropriate. And indeed, the department has advised us to concede that issue, and we do. But this isn't a case where these defendants would be entitled to a reduction that would get them out during anything close to the time expected for the pendency of this appeal. Wouldn't that last by me again, Mr. Smith? What is it that the department has encouraged the AUSAs to acknowledge? They have encouraged us to seek remands in a case where if the defendant were to file a 3582C motion on March 3rd, that the amount of time he has already served on a sentence imposed some time ago with the two-level reduction would entitle him to be released on a time-served sentence at that time. But that's something that we would think might be different. That would be the case. Judge Jordan, you asked what would counsel us to choose a procedure different from that mandated by Congress. Well, that's one that would perhaps justify a remand so that the procedure adopted by Congress could be pursued in an expeditious fashion so as to give the defendant an opportunity to ask for all he's entitled to. But these cases don't fall within that narrow exception. Isn't the contrary of the holding in the Marcello case where the court had the issue on appeal, there was a retroactive amendment to the guidelines and the Third Circuit ruled that we're not going to require the defendant to petition under 3582C, no remand? I don't think the court really ruled we're not going to require him to file. I think the court, the question there was whether the court itself, whether this court should grant the 3582C relief and the court held that it should not and it said we'll remand for the district court to consider. I think the difference between remanding for the district court to consider and remanding for the defendant to file a motion for the district court to consider is a pretty small difference. But I think the procedure that Congress has mandated. So I don't really think the court was attuned to that specific issue, the difference between a remand and simply leaving him to his 3582C remedy. But I think if you look at the way the procedure is written by Congress. I always wonder if these defendants, especially the defendants that we are addressing here, are going to think, you know, I don't think I'm getting a fair shake. I think I might have, I would get a fair shake if I can go back to the judge and emphasize the court's ruling in Kimbrough, if I can emphasize the sentencing commission's decisions to reduce or to change the guidelines to take into account the disparity. The defendants are not going to think that they're going to get fair process. Well, I frankly have met few defendants who feel they have gotten fair process, but my answer to your question is we as prosecutors certainly saw no lack of emphasis in Gwinter. Okay. We didn't think that the court, and Judge Cain clearly didn't think that the court was saying anything other than what the Supreme Court ultimately said in Kimbrough, which is that 101 ratio is no more mandatory than any other provision in the guidelines. And you have the discretion to sentence below what you otherwise would based on your belief that that ratio is not appropriate in this case. Now, I'm way over, but I did answer the court's questions. Thank you very much. Thank you very much, Your Honors. Mr. Krauss, two minutes on rebuttal. I'll get this later. I just wanted to pick up on the last point that Judge Fuentes made about defendants feeling that if this does not go back to the district court for a full plenary reconsideration that they're not going to get a fair shake, which is that if the court might consider whether if you don't do that now, they're not going to be a slew of 2255 petitions making that point down the pike. So it may be just a matter of heading that off now or dealing with it later. Won't there be a slew of those anyway, though, really, Mr. Krauss? I mean, I assume we did what you're suggesting. And I want to emphasize I'm not being flipped here at all. My experience indicates that people who are incarcerated logically are looking for every opportunity to try to shorten that term, and they're going to come forward with 2255s no matter what happens, aren't they? That's true, Your Honor, but some have more of a basis than others, and I think this will give them a legitimate argument to make in those petitions. And what would that argument be specifically? Well, that they were denied the right to be sentenced fully under the rules of Kimbrough, Gall, and in light of the new crack guidelines. And that, as a result, the district court felt constrained and didn't feel the full effect of the discretion that it had to render the decision. You argue for Cooper as well. Cooper got a 35-month below guideline sentence, and he argues that his sentence should be remanded because the court didn't specify the degree to which it considered the disparity. You don't suggest that judges have to actually articulate a specific degree of reduction or variance when they sentence under the crack power disparity. Well, this court has stated that there are no magic words that the district court must articulate, but I think the record needs to be clear so that the court can properly review whether or not the district court did properly exercise the discretion. And I think at Cooper, there's some question about whether or not that discretion was fully understood and exercised. But the court did actually acknowledge, clearly acknowledge, that it considered the disparity. That's true. That's true. Mr. Cross, your time is up, and thank you very much. Thank you, Your Honor. The case is very well argued. It's a very important case in our circuit, and we'll take it under advice. Thank you, Your Honor. Thank you. Ready to go? All right. Call the next case.